# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| KYLE LAUKUS d/b/a AMERICAN PRIDE, | ) ) ) | CASE NO.  5:07CV2331 |
| PLAINTIFF, | ) ) | JUDGE SARA LIOI |
| vs. | ) ) ) | OPINION AND ORDER |
| RIO BRANDS, INC. et al., | ) ) ) ) ) | |
| DEFENDANTS. | ) | |

Before the Court is the motion of Plaintiff Kyle Laukus (Laukus) to strike the amended initial disclosures of Defendant Wal-Mart Stores, Inc. (Wal-Mart). (Doc. No. 184.) This motion is fully briefed and is ripe for decision. Also before the Court are the parties' respective position papers outlining each party's proposal for the disposition of the remainder of this litigation.[1] Included within the position papers of Defendant Rio Brands, Inc. (Rio) and Wal-Mart is a request to reopen discovery. Wal-Mart also seeks leave to amend its pleadings.

**Background**

In this infringement case, Laukus claims that the American flagpole kits, manufactured by Rio and sold in retail stores such as Wal-Mart and BJ's, infringe upon plaintiff's rights under the Lanham Act. Specifically, Laukus complains that the

---

[1] The Court also afforded the parties an opportunity to respond to each respective position paper, and the Court has considered these filings, as well
.

packaging utilized by Rio for its flagpole kits and consisting of the colors, red, white, and blue, and the words "American Pride" has caused confusion in the market and has caused customers to associate these allegedly inferior kits with Laukus' flag-related products that are also sold under the mark "American Pride." In addition to a claim for federal trademark infringement, the Second Amended Complaint raises claims for common law trademark infringement, trademark counterfeiting, unjust enrichment and unfair competition under Ohio Rev. Code § 4165.02 *et seq*. (*See* Doc. No. 45, Second Amended Complaint.) Rio filed a counterclaim for cancellation of the mark.

On September 24, 2008, the Court filed a memorandum opinion dismissing Plaintiff's claims for trademark infringement and unfair competition, to the extent they sought past damages, on the basis of laches. (Doc. No. 137.) On January 14, 2009, the Court filed a second memorandum opinion, ruling that Plaintiff was precluded from seeking actual damages or disgorgement, and leaving for trial the issues of infringement under federal and state law, cancellation of Plaintiff's mark, and the propriety of injunctive relief. (Doc. No. 172.) Pursuant to certain stipulations of the parties, including an agreement that Rio would dismiss without prejudice its counterclaim with leave to re-file if the case returned on appeal, the Court entered a final, appealable order on March 6, 2009. As a result of the appeal from those orders, the jury trial scheduled for April 20, 2009 was cancelled.

On August 11, 2010, the Sixth Circuit reversed the decisions of this Court, in part, finding the existence of genuine issues of material fact as to whether any portion of Plaintiff's claims were barred by the doctrine of laches, and whether Plaintiff was entitled to lost profits. The court of appeals also determined that Plaintiff had made out a

2

prima facie case as to his counterfeit trademark claim. (Doc. No. 181.) The Sixth Circuit issued its mandate on October 5, 2010, remanding this action back to the district court; at which time proceedings resumed in this Court.

**Discussion**

       1.      **Plaintiff's Motion to Strike**

       On January 5, 2011, Wal-Mart filed its amended initial disclosures under Fed. R. Civ. P. 26(a)(1), identifying thirteen (13) previously undisclosed witnesses. (Doc. No. 184, Ex. B.) Plaintiff has placed the newly identified witnesses into three categories for the purpose of identification and discussion. The first category includes individuals who will testify as to the tax liens that exist with respect to the property of Kyle and Renee Laukus, as well as that of American Pride Trust. Second, Wal-Mart has added Lisa Wells who would testify as to Wal-Mart's 2004 purchase of American Pride flags for its Benton Harbor, Michigan store. Third, Wal-Mart seeks to add Brian McMahon, Laukus's prior counsel, to testify regarding Plaintiff's investigation preceding the February 28, 2005 cease-and-desist letter and other matters.

       Plaintiff maintains that these belated amended disclosures should be struck and the proposed witnesses should not be permitted to testify at trial because Wal-Mart's delay in coming forward with this information has prejudiced Plaintiff. Specifically, Plaintiff notes that the amended disclosures were filed more than two years after the close of discovery. Plaintiff insists that he is now, as he was in 2009, ready for trial, and that this Court should permit no further delays.

       Wal-Mart claims that its amended disclosures were filed in accordance with the Federal Rules of Civil Procedure and in compliance with both the spirit and the

letter of Rule 26, which requires initial disclosures to be supplemented if "additional information has not otherwise been made known […]." Fed. R. Civ. P. 26(e)(1)(A). Wal-Mart further maintains that it was a combination of Plaintiff's lack of candor during discovery, and the Sixth Circuit's ruling on appeal that has necessitated the amendment. Ultimately, however, Wal-Mart insists that any delay in amending its disclosures was harmless.

Pursuant to Rule 26(a)(1)(A)(i) and (C), "a party must, without awaiting a discovery request, provide to the other parties," within 14 days after the parties' Rule 26(f) conference:

> the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment [.]

Rule 26 also requires parties to supplement or correct disclosures upon information later acquired. Fed. R. Civ. P. 26(e)(1)(A).

"Federal Rule of Civil Procedure 37(c)(1) requires absolute compliance with Rule 26(a), that is, it 'mandates that a trial court could punish a party for discovery violations in connection with Rule 26 unless the violation was harmless or is substantially justified.'" *Roberts v. Galen of Virginia, Inc*., 325 F.3d 776, 782 (6th Cir. 2003) (quoting *Vance v. United States*, 1999 U.S. App. LEXIS 14943, *3 (1999) (footnote omitted)). "Thus, if the Court determines that a party's violation of Rule 26(a) is harmless or substantially justified, it may allow the party to use" the untimely evidence. *See Hollenbaugh v. Estate of Joel Hollenbaugh*, 2007 WL 2462642, *2 (N.D. Ohio Aug. 27, 2007) (citing *Roberts*, 325 F.3d at 782).

The party facing discovery sanctions, however, bears the burden of proving substantial justification or that the violation was harmless. *Roberts*, 325 F.3d at 782. In evaluating whether a violation is harmless, courts consider the importance of the testimony, the reason for the failure to disclose the witness earlier, and the prejudice to the opposing parties if the witness would be allowed. *See Bearint v. Dorell Juvenile,* 389 F.3d 1339, 1353 (11th Cir. 2004) (citing *Rogers v. Muscogee County School District*, 165 F.3d 812, 818 (11th Cir. 1999)).

*Tax Lien Witnesses*

Wal-Mart insists that it was substantially justified in delaying its identification of these witnesses because it only learned that Plaintiff's property, including his "American Pride" mark, was subject to tax liens while the present case was on appeal. According to Wal-Mart, the existence of these liens raises questions as to Plaintiff's standing, and as to whether the Internal Revenue Service (IRS) and the State of Michigan are necessary and/or indispensable parties to this litigation.

Wal-Mart explains that it did not discover the tax liens until it came across a *pro se* action that Plaintiff recently filed against certain taxing authorities. Attached to this new case were tax documents that set forth the existence of the tax liens, and were, in Wal-Mart's opinion, responsive to its prior discovery requests but were not produced by Plaintiff during discovery. Plaintiff argues, however, that Wal-Mart was aware during discovery that Plaintiff had tax issues, but failed to follow up with additional discovery requests in a timely manner.

The record reflects that, during Plaintiff's deposition on July 22, 2008, counsel for Wal-Mart asked Plaintiff to identify any and all records and documents

relating to his and American Pride Trust's asserted business. Plaintiff testified that he did not have any business records, but admitted that he did have some tax "issues." (Doc. No. 189, Ex. B, Excerpts from Plaintiff's Deposition, at 49-50, 77.) When Wal-Mart's counsel inquired into these "issues," Plaintiff's counsel instructed his client not to answer any questions on the subject. Counsel also told Wal-Mart that the tax issues were irrelevant to the present case, and that all documents related to these issues were either misplaced or destroyed. In the end, counsel agreed to discontinue the line of questioning until the dispute over this discovery matter could be resolved by the Court. (*Id*. at 81-87.) Wal-Mart never brought this discovery dispute to the Court's attention.

Without question, there appears to be plenty of blame to go around. While Wal-Mart should have pursued the matter with the Court, there is no way that Plaintiff's vague reference to tax "issues" would have alerted Defendants to the fact that the mark in question in this action was subject to a tax lien. Moreover, it is clear that Plaintiff and his counsel were, at the very least, mistaken when they represented that Plaintiff had no documentation relating to his tax issues in his possession when some of these documents became exhibits in Plaintiff's subsequently filed tax action.

Nonetheless, the Court need not determine whether Wal-Mart was substantially justified in its failure to timely amend its initial disclosures because it is clear that any such violation was harmless. That Plaintiff knew of the tax liens that were levied against himself, his ex-wife, and his company is evident from the fact that he produced documentation regarding these tax liens in the *pro se* case he filed against the government. Further, to the extent that these tax liens may call into question Plaintiff's standing, and dictate whether certain absent parties are necessary and/or indispensable, it

6

is important to the litigation. As such, the Court will permit the amended initial disclosures as to the tax lien witnesses, and Plaintiff's motion to strike these disclosures is denied.

*Lisa Wells*

Likewise, it is clear that Plaintiff has known about the existence of Lisa Wells and her relevant knowledge since prior to the initiation of this lawsuit. Indeed, it was Plaintiff who produced documents with her name on them early in discovery. (Doc. No. 190, Ex. C, Sale Records.) The record shows that Ms. Wells purchased flags and poles from Plaintiff for use in one of Wal-Mart's stores. Plaintiff was aware of the sale inasmuch as he produced the documents memorializing the sale during discovery. Wal-Mart now claims that these documents, and Ms. Wells's testimony, are relevant to the issue of damages.

The Court finds that the delay in identifying this witness is harmless. Plaintiff was aware of this witness, and can point to no prejudice resulting from Wal-Mart's delay in identifying her as someone with relevant knowledge. Consequently, the Court will permit the amendment identifying Wells as someone with discoverable knowledge, and Plaintiff's motion to strike as to this witness is denied.

*Brian McMahon*

Finally, the Court finds that Plaintiff will not suffer harm, surprise or prejudice from Wal-Mart's belated identification of Brian McMahon, Plaintiff's former attorney, as a potential witness in this case. Mr. McMahon represented Plaintiff prior to the initiation of this lawsuit, and authored the 2007 cease-and-desist letter that is at the heart of this litigation. Wal-Mart has indicated that it has identified Mr. McMahon

because he has knowledge relating to Plaintiff's pre-litigation efforts to investigate Rio's use of the "American Pride" mark. While it remains to be seen whether Mr. McMahon may give relevant testimony that is not protected by the attorney-client privilege, the identification of him as a witness was harmless.

For all of the foregoing reasons, the Court DENIES Plaintiff's motion to strike.

### 2. Defendants' Request to Reopen Discovery

In their respective position papers outlining a course for the remainder of the litigation, both Rio and Wal-Mart requested that the Court reopen discovery for the limited purpose of exploring two issues: (1) whether Plaintiff has standing in light of the existence of tax liens on his property and whether the State of Michigan or the IRS are necessary and indispensable parties to this action; and (2) the extent of Plaintiff's sales following Rio's abandonment of the "American Pride" mark on its flag products. (*See* Doc. No. 186 at 1.) The fact that the Court has granted Wal-Mart leave to amend its disclosures touching on these issues does not necessarily mean that it would be appropriate to reopen discovery. This requires a separate analysis.

The Court has broad discretion over discovery matters. *Trepel v. Roadway Express*, *Inc.*, 194 F.3d 708 (6th Cir. 1999). "The party seeking to reopen discovery must indicate to the court the need for more discovery, what material facts it hopes to uncover and why it has not previously discovered the information." *U.S. Diamond v. The Julius Klein Diamonds*, 2008 U.S. Dist. LEXIS 57825, *32 (S.D. Ohio July 29, 2008).

Courts consider numerous factors when determining whether to reopen discovery. *See Morgan v. Gandalf, Ltd.*, 165 Fed. Appx. 425, 431 (6th Cir. 2006); *United*

8

*States v. LaBine*, 73 F. Supp. 2d 853 (N.D. Ohio 1999); *U.S. Diamond*, 2008 U.S. Dist. LEXIS 57825, at *32; *Lowe v. Hamilton County Job & Family Services*, 2007 U.S. Dist. LEXIS 37257, *8 (S.D. Ohio May 22, 2007). These factors include:

> whether the movant has demonstrated good cause for reopening discovery; whether the need for additional discovery was precipitated by the neglect of the movant or by the party opposing the motion to reopen; the specificity of the discovery that is sought; the relevance of the discovery being sought; and whether the party opposing the motion to reopen discovery will be prejudiced.

*U.S. Diamond*, 2008 U.S. Dist. LEXIS, at *32 (numerals omitted). *See also* Fed. R. Civ. P. 16(b).

First, the Court considers the request to conduct additional discovery with respect to the tax liens.[2] As set forth above, Plaintiff and Defendants share in equal measure in the fact that the existence and ramifications of the pending tax liens were not explored during discovery. In addition, both Plaintiff's standing and the absence of possible necessary and/or indispensable parties are certainly relevant. Thus, these two factors tip slightly in favor of reopening discovery.

Nonetheless, Defendants have failed to set forth with any specificity what discovery they would seek. Tax liens are a matter of public record and, now that Defendants are aware of the existence of these liens, they should be able to locate all public records relating to these liens. The Court cannot see what would be gained from delaying this case further to afford the parties an opportunity to discover documents that

---

[2] Defendants argue that Plaintiff agreed to conduct additional discovery on the issue of the tax liens. As discussed above, it is true that, during Plaintiff's July 22, 2008 deposition and after Plaintiff's counsel directed his client not to answer any questions regarding his tax issues, counsel agreed that Plaintiff's deposition could be reopened if the Court determined that this was an appropriate subject for discovery. The fact remains, however, that Defendants did not bring this issue to the Court's attention before the end of discovery, nor at any time prior to the Court issuing its rulings on summary judgment.

are equally available to both sides. Given Defendants' dubious need for further discovery, and in light of Plaintiff's strong interest in having this matter submitted for trial as soon as possible, the Court finds that the competing interests weigh in favor of denying Defendants' request to conduct further discovery on this topic.

As for the topic of Plaintiff's sales since the appeal, the Court finds even less justification for reopening discovery. Defendants maintain that the Sixth Circuit's August 11, 2010 decision has created a new need for this discovery. Specifically, Wal-Mart argues the Sixth Circuit has "clarified" the issues to be explored at trial, including the burden for proving damages, and Rio claims that the decision actually "shifted the burden" for establishing profits. Neither representation is based in fact.

In its rulings on summary judgment, the Court did not attempt to set forth the burden of proof for establishing damages, or establish new law on this subject. In fact, this Court distinguished *Mishawaka Rubber & Wollen Mfg. Co. v. S.S. Kresge Co.,* 316 U.S. 203, 206-07 (1942); and *Wynn Oil v. Am way Serv. Corp*., 943 F.2d 595, 606-07 (6th Cir. 1991), on the basis that they involved the criteria for determining the amount of a profit award after a plaintiff had already established the right to such an award. (Doc. No. 172 at 39, n. 24.)

This Court did not seek to disregard well-settled law holding that "[t]he burden is on the infringer to prove that his infringement had no cash value in sales made by him. If he does not do so, the profits made on sales of goods bearing the infringing mark properly belong to the owner of the mark." *Mishawaka Rubber*, 316 U.S. at 206-07. This law existed at the time the parties were engaging in discovery, and should have

governed Defendants' determination of what discovery they would seek with respect to Plaintiff's sales.

Nor does the fact that this case has returned from appeal offer justification to reopen discovery. Defendants have cited no authority that the mere fact that time has passed since discovery closed warrant on-going discovery. Likewise, Defendants have offered no support for their position that Rio's voluntary cessation in late 2007 of its use of the "American Pride" mark entitles them to additional discovery.[3] While Defendants claim that they have a right to explore the effect of this cessation on Plaintiff's sales, it is clear that Defendants had this opportunity during discovery, inasmuch as fact discovery did not end until May 23, 2008.

Balanced against Defendants' undue delay in seeking this discovery, the prejudice that will befall Plaintiff from further delays in this matter weighs strongly in favor of denying Defendants' request to reopen discovery. There must be some end to the discovery portion of this action; no party has a right to continue discovery indefinitely. Thus, for all of the reasons set forth above, the Court DENIES Defendants' request to reopen discovery.

### 3.    Wal-Mart's Request to Amend its Pleadings

Finally, Wal-Mart argues that it should be permitted to amend its pleadings to add a counterclaim for cancellation of the "American Pride" mark. Whether to permit leave to amend the pleadings ordinarily is governed by Rule 15, which provides that, after the defendant files a responsive pleading, "a party may amend its pleading only

---

[3] In fact, Wal-Mart notes that Rio ceased use of the "American Pride" mark by the end of 2007.  (*See* Doc. No. 189 at 8; Doc. No. 140, Ex. A, Warren Cohen Dep., at 108, 118-19.)

11

with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2).

"The court should freely give leave when justice so requires." *Id*. The decision whether to

permit the amendment is committed to the discretion of the trial court. *See Zenith Radio*

*Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330-32 (1971); *Estes v. Ky. Util. Co.*,

636 F.2d 1131, 1133 (6th Cir. 1980). The trial court's discretion is, however, "limited by

Fed. R. Civ. P. 15(a)'s liberal policy of permitting amendments to ensure the

determination of claims on their merits." *Marks v. Shell Oil Co.*, 830 F.2d 68, 69 (6th Cir.

1987) (citation omitted). "In the decision whether to permit an amendment, some of the

factors which may be considered by the trial court are undue 'delay in filing, lack of

notice to the opposing party, bad faith by the moving party, repeated failure to cure

deficiencies by previous amendments, undue prejudice to the opposing party, and futility

of amendment.'" *Gen. Elec. Co. v. Sargent & Lundy*, 916 F.2d 1119, 1130 (6th Cir. 1990)

(quoting *Hageman v. Signal L.P. Gas, Inc.*, 486 F.2d 479, 484 (6th Cir. 1973)).

    In support of its request to amend, Wal-Mart points to the parties' March

3, 2009 stipulation, which transformed the Court's rulings on summary judgment into

final, appealable orders and made an immediate appeal to the Sixth Circuit from these

rulings possible. Specifically, that stipulation provided:

> In the event of a reversal or remand of the proposed final judgment or the
> Court of Appeals' decision to decline jurisdiction over an appeal from the
> proposed final judgment: (i) Defendant Rio Brands, Inc., shall have the
> right to reassert its Counterclaim for cancellation of Plaintiff's service
> mark 'American Pride' without any waiver of any rights or claims; and (ii)
> Plaintiff and Defendants shall have the right to reassert any other claims
> previously asserted and remaining in this lawsuit without any waiver of
> any rights or claims.

(*See* Doc. No. 174, Stipulation.)

It is clear from the stipulation that only Rio was afforded the right to reassert its counterclaim for cancellation of Plaintiff's mark. Further, while the stipulation contemplates that all parties may "may reassert any other claims previously asserted and remaining in this lawsuit," Wal-Mart did not previously assert a claim for cancellation. As such, Wal-Mart cannot look to the stipulation for support for its request to amend.

Thus, the Court must balance the relevant factors to determine whether amendment is warranted. First, the Court notes that Wal-Mart fails to offer any explanation as to why it failed to amend its answer before January 15, 2008, the deadline set in the Court's Case Management Plan and Trial Order for amending pleadings. On September 10, 2007, Wal-Mart filed its Answer to Plaintiff's Amended Complaint. (Doc. No. 17.) Three days later, on September 13, 2007, Rio filed its Answer, which included a counterclaim for cancellation. Notwithstanding Rio's assertion of this counterclaim, Wal-Mart never sought leave to further amend its Answer. In fact, on January 22, 2008, Wal-Mart filed it Answer to Plaintiff's Second Amended Complaint without asserting a counterclaim for cancellation or seeking leave to assert such a claim. Wal-Mart's undue delay in seeking such a claim weighs against allowing such an amendment.

Nonetheless, there is no evidence that Wal-Mart engaged in bad faith in its delay in seeking the right to amend its pleadings. Moreover, Plaintiff has been on notice that cancellation of his mark is an issue since Rio raised the counterclaim on September 13, 2007, and Plaintiff had the opportunity to explore this claim during discovery. Further, given the fact that cancellation is already a part of this case, Plaintiff can point to no prejudice that would result from Wal-Mart also asserting this claim. These factors weigh in favor of allowing the amendment.

13

Ever mindful that the right to amend should be "freely given when justice so requires," Fed. R. Civ. P. 15(a), the Court finds that the balance of the competing interests favors allowing Wal-Mart to amend its Answer to include a counterclaim for cancellation. Consequently, Wal-Mart shall have leave until May 20, 2011 to amend its Answer to include a counterclaim for cancelation.

**Conclusion**

For all of the foregoing reasons, Plaintiff's motion to strike is DENIED in its entirety, as is Defendants' request to reopen discovery. Defendant Wal-Mart shall, however, be granted leave until May 20, 2011 to amend its Answer to include a counterclaim for cancellation of Plaintiff's mark. Further, defendants are granted leave until June 1, 2011 to file a motion addressing Plaintiff's standing to bring the present suit, and whether necessary and/or indispensable parties are absent from this litigation. If such a timely motion is filed, Plaintiff shall have leave until June 27, 2011 to file a response, and Defendants shall have leave until July 7, 2011 to file any reply.

**IT IS SO ORDERED**.

Dated: May 12, 2011

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT**