IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| KYLE LAUKUS, | ) | |
| | ) | Case No. 05:07-CV-02331-SL |
| Plaintiff-Counterclaim Defendant, | ) | |
| | ) | |
| vs. | ) | The Honorable Sara Lioi |
| | ) | U.S. District Judge |
| RIO BRANDS, INC., *et al.*, | ) | |
| | ) | |
| Defendants-Counterclaim Plaintiffs. | ) | |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION FOR SANCTIONS**

Defendants file this Motion only after carefully weighing the facts and harm caused them. Unfortunately, the extreme gravity of the prejudice caused by Plaintiff's and his counsels' egregious misconduct cannot be remedied.  The misconduct can most succinctly be summarized as: (i) Plaintiff and his counsel violating the Federal Rules and the Court's scheduling Order by withholding highly material, prejudicial, evidence – for over four years (until the eve of trial); (ii) Plaintiff's and his counsels' serial erroneous arguments before both the district and appellate courts which are directly contradicted by the concealed evidence; and (iii) this Court's, the Sixth Circuit's, and Defendants' material reliance upon the Plaintiff's purported facts and arguments that are rebutted by the concealed evidence (that Plaintiff and his counsel chose never to correct).  The withheld evidence goes to the very heart of Defendants' earlier filed dispositive motions – which this Court granted.  The withheld evidence is also indisputably material to and *compromised* the Sixth Circuit's opinion.  At this late stage, it is impossible to turn back the clock on the irreparable prejudice Plaintiff's and his counsels' misconduct caused.  Plaintiff's case should be dismissed, with prejudice, **and** Defendants should be awarded their fees and expenses (including, but not limited to, attorneys' fees) incurred in connection with the lawsuit.

## I.　　Introduction.

From the very outset, Laukus' long delay in filing this case has consistently been front and center. Doc. No. 10, Opinion, pp.13-15.  For almost 5 years, the only discovery responses and evidence Laukus produced that identified the date of his knowledge of the accused products (February 28, 2005) was the cease and desist letter he sent Rio Brands and his Verified response to Walmart's interrogatories (identifying "2005").  This Court, the Sixth Circuit, Defendants – and *remarkably Plaintiff* – all materially relied on this date in arguing and assessing laches under Ohio law. Indeed, using that date, Laukus and his counsel vehemently argued both here and before the Sixth Circuit that the upper limit of his delay was at most "5 months" beyond the 2 year statutory

1

presumption and "does not constitute laches." Exh. A, Ptf. App. Br., pp.10-11 ("At most, Laukus filed this lawsuit a mere five months after the state statute of limitations elapsed"); Doc. No. 253, Ptf. Opp. Laches Mot. *in Limine* ("Laukus's delay in filing this case was only five months"). Little did Defendants, the Court, or the Sixth Circuit know that Plaintiff and his counsel long possessed and withheld extremely damaging, contradictory, evidence.

Defendants just recently learned that Plaintiff and his counsel withheld the proverbial "smoking gun" -- a tangible receipt that indisputably establishes that Laukus himself purchased the accused products at least as early as June 1, 2004: **at least 3 years and 2 months before the lawsuit was filed**. The import of the concealed evidence is unmistakable. It not only tacks nine additional months onto Laukus' unreasonable delay; but, even more compelling, it establishes that Laukus' and his counsels' effort to fabricate "good cause" by arguing to the Sixth Circuit that it should "factor" in Laukus' material reliance on Michigan's 3 year statutory period was unquestionably improper. The very facts that Defendants, this Court, and the Sixth Circuit relied upon are simply untrue. And, incredibly, the withheld evidence has admittedly been in Laukus', Mr. Martin's, and Brouse McDowell's possession, custody and control *throughout this entire lawsuit* – yet they failed to produce it.

The damaging evidence surfaced during the recent deposition of Laukus' trial lawyer turned witness, Richard Martin. Plaintiff's unabashed strategy is to use Mr. Martin to bolster Laukus' allegation that he had "good cause" for his alleged "5 month delay." Incident to the deposition, Defendants served a *subpoena duces tecum* on Mr. Martin which, fortuitously, resulted in Mr. Martin producing a folder of "81 pages" of documents Laukus initially furnished him. Importantly, in August, 2006, Mr. Martin promptly copied and provided the same documents to Mr. Dattilo. The deposition not only resulted in the identification of the "smoking gun" receipt, but also revealed yet a fifth moving-target reason for Laukus' delay (litigation counsels' desire to accrue a higher volume

of potential damages) and identified additional responsive documents that have not been produced.

The prejudice caused by Plaintiff's and his counsels' withholding of material evidence, and propounding of false and misleading arguments, simply cannot be remedied. Defendants have been irretrievably denied: (1) the right to perform highly material discovery on the concealed evidence; (2) the ability to question previously deposed witnesses regarding the withheld material evidence; (3) the right to present and argue these facts to this Court and the Sixth Circuit; (4) the right to have this Court and the Sixth Circuit consider and weigh the material evidence and arguments in ruling on Defendants' motions for summary judgment; (5) the opportunity to file dispositive motions on the defenses of equitable estoppel, waiver, unclean hands, and acquiescence – all supported by the concealed evidence; (6) the right to use the concealed evidence during the formal and expensive mediation/settlement conferences; and (7) the likely final disposition of this case long ago – without the Court expending its resources and the Defendants incurring substantial fees and expenses. There is simply no way to turn back the clock and remedy Plaintiff's and his counsels' egregious misconduct. Dismissal and an award of attorneys' fees is the only fair and equitable remedy.

## II.    Plaintiff Laukus and his Counsel Concealed the Highly Material June 1, 2004 Receipt.

Remarkably, throughout this case, Plaintiff and his counsel consistently took the position that "at most" Laukus waited until 5 months after the applicable Ohio two year statutory period to file this lawsuit. Yet, it turns out that they knew all along that this was false -- Laukus knew of, inspected, and *purchased* the accused product at least *3 years and 2 months* before the lawsuit was filed. And, each possessed a copy of the indisputably "smoking gun" June 1, 2004 receipt (the "Receipt") that verified this fact. Exh. B.



Richard Martin's sworn testimony establishes that: (i) Laukus

3

provided Mr. Martin with a copy of the Receipt in July 2006; (ii) Mr.  Martin promptly provided Mr.
Datillo with a copy of the Receipt; and, nevertheless (iii) the Receipt and its contents were never
produced nor disclosed during discovery. Exh. C, Martin Tr. at 24:10-26:19, 62:5-17, 31:11-32:18, &
29:19-24.  During this Court's August 1, 2012 hearing, Mr. Dattilo finally conceded that the Receipt
has been in his files throughout the case and was never produced.  Plaintiff cannot escape the fact
that the Receipt is material, clearly responsive to written discovery propounded over 4 years ago, was
in his and his counsels' possession the entirety of this case, and despite its high materiality – was not
produced:

- Walmart Doc. Req. No. 40:  Produce all documents, things and electronically stored information concerning all investigations regarding any uses of the words AMERICAN PRIDE.

- Walmart Doc. Req. No. 52:  Produce all documents, things and electronically stored information concerning Laukus's allegations in the Complaint, Amended Complaint, and Second Amended Complaint.

- Walmart Doc. Req. No. 58:  Produce all documents, things and electronically stored information concerning any alleged pre-filing investigation conducted by Laukus in this lawsuit.

- Walmart Interrog. No. 4:  Identify each and every use of the words "American Pride" by any person(s) or entity(ies) other than You and, for each such use, identify the location where such use occurred, the date(s) of such use, any documents associated with such use, and all persons having knowledge of such use.

- Rio Brands Doc. Req. No. 17:  All documents concerning any of the activities of Defendants herein for which Plaintiff seeks redress.

- Rio Brands Doc. Req. No. 30:  All documents concerning Plaintiff's knowledge of the use by others of the mark AMERICAN PRIDE in association with goods and/or services.

### A.  The "Receipt" was Open & Obvious -- Hardly Hidden in a Million Documents.

Mr. Martin's file contained a total of 81 pages. Exh. D.  Messrs. Martin and Dattilo
possessed these documents since, respectively, July and August, 2006 – and both were counsel of
record throughout this case.  These are the very documents Plaintiff tendered to counsel to elicit

4

their representation.  And the Receipt evidences, in part, Plaintiff's investigation, allegations, the accused product, Rio Brands' activities, and knowledge of the accused infringement.  Yet, neither Messrs. Martin, Dattilo, their colleagues, nor Plaintiff, <u>ever</u> produced the Receipt in response to discovery – nor did they reveal Plaintiff's *at least* 3 year and 2 month delay to the courts.

To put this in context, Plaintiff's document production was, to be generous, *de minimus* – the Receipt is anything but a "needle in a haystack."  Plaintiff's total *meaningful* production was <u>181</u> pages as Laukus produced <u>a mere</u> 871 <u>total pages</u> in response to Walmart's written discovery. Of that, 690 of the pages were a single stack of invoices (540 pages) and a printout of a single file from Laukus' QuickBooks software (150 pages) – leaving <u>181</u> pages. *See* <u>Exh. E</u>, Laukus Tr., 217-222.  And, the Receipt jumps out from even a cursory review of the <u>81</u> page folder of documents Laukus tendered to Messrs. Martin and Dattilo.

Plaintiff and his counsel knew from "day one" that Laukus' delay in filing suit was a key issue, repeatedly emphasized that this case was worth $30M, and now want the Court to believe that they missed the "smoking gun" Receipt in Laukus' <u>81</u> page file.  It defies imagination that anyone missed the Receipt, much less failed to appreciate its materiality and responsiveness.  There is no legitimate excuse for it having been withheld.

### B.       There is More than an Inference of Intent.

It appears clear that Plaintiff and his counsel never intended for the Receipt to see the light of day.  It is fundamental that litigants have a duty to produce relevant documents.  It is also fundamental that lawyers have a duty to produce relevant evidence provided by their clients and, of course, perform an appropriate investigation to identify and produce relevant, responsive, documents. *See* Ohio Prof. Cond. Rule 3.4.  Here, Plaintiff provided his counsel with only "<u>81</u>" pages of evidence he deemed material to persuade them to take the case.  Yet, Plaintiff and counsel never produced the most important record in that file -- the Receipt.  Laukus explained (and Mr. Martin

represented) that he had virtually no documents as the IRS confiscated his records. Exh. E, Laukus Tr., 49-50, 85; Exh. F, Laukus Tr., 164-165. The striking paucity of the documents Laukus' counsel were required to review was *trivial*. Yet, not just one, but two law firms, and six attorneys of record, possessed and failed to produce the Receipt.

The backdrop gets even darker – while intent is not necessary – the evidence of intent is overwhelmingly bolstered by the only privilege log Laukus' counsel produced, over four years ago. Exh. G. One of a total of only 8 entries on the privilege log ambiguously identifies a June 1, 2004 e-mail from Laukus to an attorney regarding an "American Pride Trademark Matter":

| E-mail from Kyle Laukus to Antigone Delaney | 6/1/2004 | Attorney-Client | AMERICAN PRIDE Trademark Matter |
| --- | --- | --- | --- |

The entry, unlike 4 others on the log, conspicuously omits the word "RIO", providing the apparent intentional impression that it has nothing to do with this case. Laukus' testimony on the entry is consistent. Laukus ambiguously testified that the entry refers to a lawyer he "just contacted . . . for information of what their firm would be capable of doing if I ever needed them." Exh. F, Laukus Tr., 215:14-216:3. While the date of the entry had no meaning before the revelation of the Receipt, its significance and materiality is now clear – and plainly not a coincidence. The date of the e-mail is identical to the date of the Receipt. While counsel withheld the content of the e-mail, there is no doubt that Laukus' June 1, 2004 purchase and Receipt was the impetus for the e-mail. It is also indisputable that counsel reviewed the e-mail, its content, and the Receipt.

Furthering the conduct, at Mr. Martin's deposition, Mr. Skeriotis admitted that he went through and shuffled the 81 pages produced by Mr. Martin and, importantly, refused to confirm that he did not remove any documents. Exh. D, Martin Tr., 38-40. Subsequently, Laukus' counsel agreed to produce a privilege log to reflect additional allegedly privileged documents in their possession, but have not done so.

The substantial web of evidence reveals Plaintiff's and counsels' absolute "fault" in failing to

6

comply with the Rules and produce highly material evidence, and a pattern of conduct that appears designed to conceal the Receipt and underlying facts.

### III. Laukus and His Counsel Materially Misled the Sixth Circuit on Laukus' Alleged Reliance on Michigan's Three-Year Limitations Period.

In considering this Court's grant of summary judgment and assessing whether Laukus had "good cause" for his delay, the Sixth Circuit pointedly asked Mr. Dattilo during oral argument whether Michigan's 3 year statute of limitations should be considered in assessing good cause:

Sixth Circuit – "Counsel if you had filed this in Michigan where your client does business you wouldn't have any laches problems, would you?"

Mr. Dattilo -- "No, that's, that's corre - well, there would be - the presumption would go the other way, your honor.  That's correct.  So three-year analogous statute in Michigan."

\*          \*          \*

Sixth Circuit -- "Alright.  In determining whether your client is guilty of laches, which is inequitably sitting on his rights, should we take into account that he is in Michigan and that I, I assume he probably knows, if, if he actually looks at the law, that he's got three years in Michigan?  I mean he, he's probably assuming his rights are governed by where he is."

Mr. Dattilo -- "I, I think that's correct your honor, that that would be an issue that goes into his reasonable belief.  And-"

Sixth Circuit -- "Well, should we factor that in?  I guess."

Mr. Dattilo -- "I, I believe it should because it goes to what is reasonable in his circumstances and how is his..." Exh. H, DVD beginning at 2:18.[1]

And, the Sixth Circuit expressly relied upon this issue in reversing this Court:

"Finally, had Laukus initiated this action in Michigan (his state of residence and the place of harm), his claims would have fallen well within that state's three-year statute of limitations, and he would have enjoyed a strong presumption of reasonableness in delaying suit. *See Mich. Comp.Laws* § 600.5805(10). We observe that, as the owner of a Michigan-based business, Laukus could reasonably have relied on the longer statutory period in calculating how long he could wait before asserting his claims in a court of law. The district court neglected to recognize this inference in Laukus's favor." Doc. No. 181, 6th Cir. Op., p.13 (emphasis added).

Setting aside whether Mr. Dattilo intentionally misrepresented that Plaintiff knew of the Michigan 3 year statutory period, Plaintiff knew, and he and his counsel (including Mr. Dattilo) had physical evidence – the Receipt – indisputably establishing, that the Michigan 3 year period *is wholly*

---

[1] A DVD containing an audio transcript of the parties' oral argument before the U.S. Court of Appeals for the Sixth Circuit is being delivered to the Court and served contemporaneously with this filing as Exhibit H.

*irrelevant*.  Plaintiff not only blew past the Ohio deadline, but also Michigan's.  The Receipt is dated June 1, 2004 and Laukus filed the Complaint on July 31, 2007.  The math is simple: Laukus and his counsel delayed *at least* 3 years and 2 months before filing the lawsuit, thus committing laches under both Ohio and Michigan law.  As Plaintiff and his counsel knew, there was and could be no reliance on the Michigan 3 year statutory period.  Yet, Messrs. Dattilo, Martin and Laukus were content to allow the Sixth Circuit to rely on the fallacy.  Apparently, winning supplanted disclosure.

### A. <u>Counsel Allowed the Error Despite Mr. Laukus' Sworn Testimony to the Contrary</u>.

Casting facts to the wind, like the Receipt, Plaintiff and his counsel had no difficulty ignoring the record during the Sixth Circuit oral argument.  When deposed earlier in the case, Laukus candidly admitted, under oath, that <u>he was unaware of any "time limitations" for filing his lawsuit</u>:

> **Q.  <u>Did there ever come a point in time where you came to understand that you needed to bring your lawsuit within a particular period of time?</u>**
> **A.  <u>No, you mean as far as time limitations?</u>**
> Q.  Right, time limitations, the statute of limitations, if those terms mean anything to you, but time limitations would be fine?
> A.  I know it was something you couldn't claim ten years later, twenty years later.
> **Q.  <u>How much time could you let go by?</u>**
> **Q.  <u>To the extent you had an understanding?</u>**
> **A.  <u>I really didn't at that time.</u>**
> Q.  Okay. When did you understand that the time period would start, if there was a time limitation?
> A:  I don't remember discussing that.

<u>Exh.</u> <u>F</u>, Laukus Tr., 220:7-221:5 (emphasis added).  Yet, again, counsel had no difficulty arguing to the Sixth Circuit that it should "factor" in Mr. Laukus' erroneous presumptive reliance on the Michigan 3 year period. <u>Exh.</u> <u>H</u>, DVD beginning at 2:18.

### B. <u>Plaintiff's Argument that the Misconduct was Immaterial is Simply Wrong</u>.

Plaintiff now asserts that the Sixth Circuit's consideration of the erroneous Michigan deadline, and Plaintiff's misleading statements and arguments, was somehow harmless because there would still be an issue on whether: (i) Plaintiff had "good cause" for his delay; and (ii) Defendants

8

were prejudiced. Plaintiff's argument neither holds water nor addresses the prejudice caused by his and his counsels' misconduct.

First, had Plaintiff and his counsel properly and timely produced the June 1, 2004 Receipt, this Court would have had a significantly stronger basis for granting summary judgment <u>and</u> the Sixth Circuit likely would have affirmed the judgment. The Receipt verifies a delay of 3 years and 2 months (1 year and 2 months past the deadline) – not the mischaracterized "5 months" advocated by Laukus' counsel. And, indeed, the Sixth Circuit's Opinion aptly notes authority supporting summary judgment based on a lesser 3-year period of delay. *See* Doc. No. 181, 6th Cir. Op, p.11 (<u>citing</u> McCarthy on Trademarks and Unfair Competition, § 31:30 "collecting cases holding time delays of between **three years** and sixty-nine years sufficient for laches defense") (emphasis added).

Second, while Plaintiff's desire to downplay the import the Michigan statutory period had on the Sixth Circuit's analysis is understandable, it indisputably played a significant role in its assessment as to whether Laukus had any plausible basis to allege "good cause" for his delay. The "Michigan" factor never should have come into play.

Third, the issue of prejudice was already amply demonstrated and is demonstrably enhanced by the added long delay evidenced by the Receipt. Indeed, the newly discovered misconduct pushes the prejudice off the precipice to a new level – and certainly rings the bell.

**IV.  <u>The Prejudicial Falsities Even Extend to Plaintiff's Erroneous Interrogatory Answers</u>.**

As they should, Defendants materially relied on Plaintiff's sworn Interrogatory answers in defending this case. Yet, as now just learned, Plaintiff's <u>Verified</u> answer to <u>Walmart's Interrogatory No. 3</u> is materially false.

Plaintiff Laukus testified that he first learned of the alleged infringement from his local Postmaster and "immediately went over to Lowe's and looked at it and bought one." <u>Exh</u>. <u>F</u>, Laukus Tr., 89:17-90:1. Of course, Laukus and his counsel repeatedly, consistently – and erroneously – have

taken the position that Laukus' first knowledge was in 2005.  For example,

in response to Walmart Interrogatory No. 3, Laukus' March 28, 2008

<u>Verified</u> answer, in part, states:



> ". . . **In 2005**, for example, <u>the local post master advised me that he had seen our flags at a Lowe's store</u>. I later determined that the flag was not sold by me, but was a counterfeit product manufactured and/or sold by Defendant Rio.  That product was similar to the counterfeit product sold by Defendant Wal-Mart. Additionally, the confusion is obvious upon a mere examination of the boxes containing the flags that have been sold by Wal-Mart. There are also other examples of confusion that can be found in the documents. <u>Pursuant to Fed.R.Civ.Pro. 33(d), documents that contain information regarding the confusion will be produced on a mutually-convenient date</u>." <u>Exh</u>. <u>I</u>.

Laukus provided this false sworn answer despite knowing both: (i) Defendants' primary defense of

laches; and (ii) the fact that the concealed Lowe's Receipt in his and his counsels' possession

materially belied this very answer.  The Receipt "thanks" Mr. Laukus for his June 1, 2004 purchase.

**V.    <u>Sanctions are Necessary, Appropriate and Envisioned by the Rules and Precedent.</u>**

The Court's inherent power and the Federal Rules of Civil Procedure are designed to address

exactly the type of misconduct that occurred here.  This Court has the authority and discretion to

grant the sanction sought here.  Indeed, courts – including in the Sixth Circuit – commonly grant the

very sanction requested by Defendants when precisely this type of litigation and discovery

misconduct occurs. *See, e.g., Polanski v. Detroit Police, 15th Precinct*, 1986 WL 17175, *1-*3 (6th Cir.

1986) (affirming striking plaintiff's Complaint as sanction where plaintiff failed to produce a letter

and testified as to the truth of facts contradicted by that letter) ("appellant cannot bring suit in a civil

action and then refuse to provide all the evidence"); *Wade v. Soo Line Railroad Corp.*, 500 F.3d 559,

560-65 (7th Cir. 2007) (affirming dismissal as sanction for plaintiff's and his counsel's failure to

timely produce five "highly probative records that should have been produced much earlier"); *Valley*

*Engineers Inc. v. Electric Engineering Co.*, 158 F.3d 1051, 1054-58 (9th Cir. 1998) (affirming dismissal

where plaintiff and plaintiff's counsel for "years" failed to produce a single "memorandum critical to

[the] case" – "what any experienced lawyer would call a 'smoking gun'").

The Sixth Circuit itself recognizes that "[w]e have never held that a district court is without power to dismiss a complaint, as the first and only sanction." *Technology Recycling Corp. v. City of Taylor*, 2006 WL 1792413, *11 (6th Cir. 2006) (*quoting Harmon v. CSX Transp., Inc.*, 110 F.3d 364, 368 (6th Cir. 1997). And, "it is presumed that dismissal is not an abuse of discretion if the party has the ability to comply with a discovery order but does not." *U.S. v. Reyes*, 307 F.3d 451, 458 (6th Cir. 2002). Plaintiff has the burden of proving that his failure to disclose the Receipt was due to <u>inability</u>, not simply an alleged lack of willfulness or bad faith. *Id.* at 457. He cannot meet this standard, much less show inability, as the Receipt has always admittedly been in his and his counsels' possession.

Myriad rules are implicated by Plaintiff's and his counsels' prejudicial concealment of the Receipt, false discovery response, and material misrepresentations to the Court and the Sixth Circuit:

- <u>The Court's Inherent Authority</u>: For Plaintiff's and his counsels' discovery and litigation misconduct.

- <u>Fed. R. Civ. P. 11</u>:[2/]  For discovery and litigation misconduct including failure to produce material documents, misrepresentations to the Court and the Sixth Circuit regarding factual contentions that have no evidentiary support, and false discovery responses.

- <u>Fed. R. Civ. P. 37(b)(2)(A)(v)</u>:  For failing to comply with the Court's scheduling orders by producing the Receipt four years after the July 18, 2008 close of fact discovery. *U.S. v. Reyes*, 307 F.3d at 457; Doc. No. 89, Order.

- <u>Fed. R. Civ. P. 37(c)(1)(C)</u>:  For failing to supplement prior productions with the Receipt as required by Fed. R. Civ. P. 26(e).

- <u>Fed. R. Civ. P. 37(d)</u>:  For failing to produce the Receipt. *Id.* at 458 ("the district court had authority to dismiss the case" under Rule 37(d) following a failure to produce documents).

- <u>Fed. R. Civ. P. 41(b)</u>:  For failing to comply with the Federal Rules and the Court's scheduling order by producing the Receipt four years after the July 18, 2008 close of fact discovery. Doc. No. 89, Order.

- <u>Fed. R. Civ. P 60(b)</u>:  For Plaintiff's and his counsels' misrepresentations, false testimony, and/or misconduct, regarding key evidence and the timing and reason for the delay.

---

[2/]  The procedural posture of this case, including the impending trial date, required that Defendants promptly approach the Court regarding the misconduct. As such, the timing and the Court's briefing schedule did not fit within the 21 day service set forth in Rule 11(c)(2). As the Court is aware, it may "[o]n its own . . . order an attorney, law firm, or party to show cause why conduct specifically described in the order has not violated Rule 11(b)." Fed. R. Civ. P. 11(c)(3). Further, if the Court deems it appropriate, Defendants will serve a separate Rule 11 Motion on Plaintiff and his counsel.

The Court, under Rule 11, has great flexibility in issuing sanctions, including dismissal.  Fed. R. Civ. P. 11 advisory committee notes.  Under Rules 37 and 41 and its inherent authority, courts in the Sixth Circuit generally look to four factors in determining whether dismissal is an appropriate sanction: "(1) whether the party's failure to cooperate in discovery is due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced by the dismissed party's failure to cooperate in discovery; (3) whether the dismissed party was warned that failure to cooperate could lead to dismissal; and (4) whether less drastic sanctions were imposed or considered before dismissal was ordered." *Harmon v. CSX Transp., Inc.*, 110 F.3d 364, 367 (6th Cir. 1997) (internal quotations omitted); *see also Pharmacy Records v. Nassar*, 2010 WL 2294538, *2 (6th Cir. 2010).  As set forth herein, the factors are easily met here.

Plaintiff's and his counsels' misconduct was plainly their "fault" and there is substantially more than an inference that such conduct was willful and/or in bad faith.  But, importantly, "fault" alone is sufficient. *See U.S. v. Reyes*, 307 F.3d at 458.  The irreparable prejudice caused by the misconduct is set forth in relevant detail below.  Even though the prejudice is irreparable, Sixth Circuit precedent establishes that it need not be. *Strother v. City of Lorain*, 2010 WL 537799, *1 (N.D. Ohio 2010) (*citing Technology Recycling Corp.*, 2006 WL 1792413, *10) ("Defendants, need not prove irremediable harm").  Defendants' July letter to Plaintiff gave adequate notice of possible dismissal. *Technology Recycling Corp. v. City of Taylor*, 2006 WL 1792413, *10 (6th Cir. 2006) (*citing Harmon*, 110 F.3d at 368).  And, the Court has the opportunity to consider lesser sanctions – however, only dismissal will serve to remedy the harm.  Dismissal here is necessary to remedy the prejudice caused Defendants and accomplish the dual purpose of punishing Plaintiff Laukus and his counsel, and deterring similar litigants from such misconduct in the future. *See National Hockey League v. Metropolitan Hockey Club, Inc.,* 427 U.S. 639, 642-43 (1976).

**VI.    The Prejudice Caused by Plaintiff's and his Counsels' Conduct is Irreparable.**

The prejudice caused by Plaintiff's and his counsels' withholding of material evidence simply cannot be remedied.  The conduct:

(1)  Irretrievably impacted the Court's summary judgment analysis and opinion (had the Court been in possession of the information, its opinion would have incorporated such facts – and likely not been reversed);

(2)  Irretrievably impacted the Sixth Circuit's decision (the panel did not have the benefit of the evidence, and was misled as to the relevance of the Michigan statute);

(3)  Precluded Defendants from performing highly material discovery on the concealed evidence;

(4)  Precluded Defendants from having the ability to question 4 previously deposed witnesses regarding the withheld material evidence;

(5)  Precluded Defendants from having the right to present and argue the concealed facts to this Court and the Sixth Circuit;

(6)  Precluded Defendants from having this Court and the Sixth Circuit consider and weigh the material evidence and arguments in ruling on Defendants' motions for summary judgment;

(7)  Precluded Defendants from having the opportunity to file dispositive motions on the defenses of equitable estoppel, waiver, unclean hands and acquiescence – all supported by the concealed evidence;

(8)  Precluded Defendants from having the right to use the concealed evidence during the formal and expensive mediations; and

(9)  Precluded the likely final disposition of this case long ago – without misdirecting the Court's limited resources and the Defendants incurring substantial fees and expenses.

Defendants are now left in a completely untenable position. This Court's grant of summary judgment, the appeal thereof, Defendants' discovery rights, and Defendants' right to file additional dispositive motions were all irretrievably compromised.  How can Defendants be made whole at this late date, over five years into the lawsuit, shortly before trial, with the appeal of this case having been prejudicially compromised, discovery impeded by the withholding of material facts, and Defendants' strategies, arguments, defenses, and right to file additional dispositive motions inalterably compromised?  They cannot.  Dismissal and an award of attorneys' fees is the only viable remedy.

**VII.    Plaintiff's "Shell Game" of  Reason(s) for His Delay.**

Trying to catch-up with Laukus' and his counsels' arguments for Plaintiff's unreasonable

13

delay is like playing a shell game. Laukus' explanation for his delay has changed no less than four times – apparently each time to morph to best defeat Defendants' defenses. Now, Laukus' attorney, Richard Martin, adds yet a new 5th reason. Of course, only one comports with the Michigan limitations argument – and the Receipt amply turns that argument on its head.

**Reason No. 1**. In his first explanation, to support his "Motion for a Temporary Restraining Order and Preliminary Injunction," Plaintiff Laukus represented that his delay was due to his need to research the availability of a counterfeiting claim. Doc. No. 10, Memo. Op. p.15, n7.

**Reason No. 2**. Next, at a subsequent Status Conference before the Court, Laukus switched gears and attributed his delay to his need to find an attorney. *See* Doc. No. 119, p.6. The record reflects, though, that Laukus had no problem finding many attorneys.

**Reason No. 3**. Then, repositioning in an effort to defeat laches at summary judgment, Laukus asserted that his delay was due to his newfound argument that he believed Rio had ceased using the words "American Pride." Doc. No. 95, Opposition, p.11-12.

**Reason No. 4**. Of course, at the Sixth Circuit oral argument, Mr. Dattilo misled the court into believing that Laukus' supposed reliance on the Michigan 3 year statutory period should be a "factor" in this case.

**Reason No. 5**. During Mr. Martin's recent deposition, he testified that the delay resulted from counsels' contingency agreement and Mr. Datillo's refusal to file a lawsuit absent the accrual of additional damages. Exh. C, Martin Tr., 138:20-140:10 (copied below). Martin also conceded that counsel understood that if Laukus filed a lawsuit, Defendants would cease using the words "American Pride" thus risking the accrual of ongoing damages. Id. Thus, the delay:

Q. But you could have sued them for past sales --
A. Yes.
Q. -- at any time, right?
A. Yes, and the problem with that was, when I spoke to Mr. Dattilo about that he was unwilling to take the case on that basis alone.
Q. On the basis of past sales?
A. On that basis alone, he was unwilling to do it, he was unwilling to commit this firm to that.
Q. Is that true even though --
A. Brouse & McDowell I should say.
Q. -- even though you knew that once a lawsuit was filed, that the actions you were complaining about would likely cease, that is --
A. Yes.
Q. -- they would change the name?
A. There was a very good chance of that, yes.

Q. So the past sales portion would be frozen forever, correct?
A. That particular portion absent other statutory damage considerations, yes, that's true.
Q. And you understood that the lawsuit, the [Lanham Act] suit, the counterfeiting suit, all of that could have been brought in this jurisdiction whether there were sales here or not?
A. Yes.
Q. Okay.
A. Yes, absolutely, the whole key to it was it was a contingent fee arrangement, there had to be enough potential damages involved to justify investing the million or million and a half dollars it would take to do the job, that's what it comes down to, Ray.

14

**VIII.   Yet, One More Prejudicial Misrepresentation – The "Flag Selling Season."**

The Receipt is also materially relevant to another element of the Sixth Circuit's reversal and criticism of this Court's summary judgment grant.  In reversing this Court, the Sixth Circuit held that this Court erred by finding that a "flag selling season" existed "*notwithstanding the fact that Laukus first discovered the infringing products during a period that fell within what the Court deemed the off-season*." Doc. No. 181, 6th Cir. Op., p.12 (emphasis added).  First, Plaintiff conceded before this Court that he believes there is a "flag-selling season." Doc. No. 137, Memo. Op., p.29 (quoting Plaintiff's "seasonal" testimony).  Second, and more importantly, as verified by the concealed Receipt, Mr. Dattilo erroneously argued to the Sixth Circuit that Laukus first found the accused products during the "non-flag selling season," when, indeed, he found the flags in June – the heart of the flag selling season (Memorial Day, Flag Day and Independence Day):

> Sixth Circuit: "Before you leave, one more question.  They, they argue that your due diligence search to see if, uh, Rio was still selling the flags with 'American Pride,' uh, was not diligent because it was conducted during the non-flag selling season, during the Fall, I think, it was, 2006.  And, that you should have known that, of course, Walmart doesn't sell flags during the non-flag selling season.  How do you respond to that argument?"

> Mr. Dattilo: "We respond to that, that **when we first found the flags it was in February of 2005** during the - quote-unquote - 'non-flag selling season.'  They were there.  And they're there, and, and, and you can go at any point in time and you will see American flags there.  And we looked-"

Exh. H, DVD, 10:41-12:06.

The materially misrepresented facts resulted in unwarranted criticism and reversal.

**IX.   Conclusion.**

For the foregoing reasons, Rio Brands, Inc., BJ's Wholesale Club , Inc., Wal-Mart Stores, Inc., and Sam's Club respectfully request that the Court grant their Motion for Sanctions, dismiss the case with prejudice, and award each of them their fees and expenses (including, but not limited to, attorneys' fees) incurred in connection with the lawsuit.

15

Respectfully submitted,

Dated this 17th day of August, 2012.

By:     /s/ Ronald S. Kopp
        Their Undersigned Counsel

        Ronald S. Kopp (0004950)
        rkopp@ralaw.com
        ROETZEL & ANDRESS
        222 South Main Street
        Akron, OH 44308
        (330) 849-6644 (Telephone)
        (330) 376-4577 (Facsimile)

        David A. Roodman (*admitted pro hac vice*)
        daroodman@bryancave.com
        Nick E. Williamson (*admitted pro hac vice*)
        nick.williamson@bryancave.com
        BRYAN CAVE LLP
        One Metropolitan Square
        211 North Broadway, Suite 3600
        St. Louis, Missouri  63102-2750
        (314) 259-2000 (Telephone)
        (314) 259-2020 (Facsimile)

        *Attorneys for Wal-Mart Stores, Inc. and Sam's Club*

By:     /s/ Ray L. Weber
        Their Undersigned Counsel

        Ray L. Weber (0006497)
        Laura J. Gentilcore (0034702)
        Renner, Kenner, Greive, Bobak, Taylor & Weber
        400 First National Tower
        Akron, Ohio 44308
        Telephone: (330) 376-1242
        Facsimile: (330) 376-9646

        *Attorneys for Rio Brands, Inc. and BJ's Wholesale
        Club, Inc.*

16

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing was, on this 17th day of August, 2012, filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system upon all counsel of record, and any other counsel of record have been served by facsimile and/or First Class U.S. Mail.  The DVD at Exhibit H has been hand-delivered to the Court and personally served upon all counsel of record.

By:    */s/ Ray L. Weber*
        *One of the Attorneys for Rio Brands, Inc. and BJ's Wholesale Club, Inc.*

By:    */s/ Ronald S. Kopp*
        *One of the Attorneys for Wal-Mart Stores, Inc. and Sam's Club*

17